**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| Plaintiff, | : | Case No. 1:25CR21-1 |
| vs. | : | |
| ROGELIO CUMPLIDO-LERDO, | : | Judge McFarland |
| Defendant, | : | |

**SENTENCING MEMORANDUM OF MR. CUMPLIDO-LERDO**

On Thursday, February 12, 2026, the Court will sentence Mr. Cumplido-Lerdo for committing the offense of illegal reentry of a removed alien, in violation of 8 U.S.C. §§ 1326(a) and (b)(1).  Rather than hold the government to its burden of proof, Mr. Cumplido-Lerdo readily accepted responsibility for his conduct and pled guilty.  Pursuant to the agreement reached between the parties, the Court has discretion to sentence Mr. Cumplido-Lerdo to any sentence up to a maximum of 10 months imprisonment.  (R.19, Plea Agreement, PAGE ID #36-37) (at ¶8).  For the reasons stated herein, Mr. Cumplido-Lerdo respectfully submits that a sentence of time served is the appropriate disposition in this case.[1]

**Guideline Range and the Plea Agreement.**

Probation calculates the advisory guideline range to be 10 to 16 months, based on a total offense level 10 and a criminal history category III.  (PSR, ¶77).  Further, probation highlights that a term of supervised release is not recommended where "an individual is a deportable alien who likely will be deported after imprisonment."  (PSR, ¶84) (citing U.S.S.G. § 5D1.1(c)).  Neither

---

[1] On the date of sentencing, Mr. Cumplido-Lerdo will have served a total of 231 days (or 7 months and 17 days) in federal custody.

party objects to the guideline calculation, and in fact, the plea agreement incorporates the bottom of the range in the sentences available to the Court. As part of the stipulated sentence, the parties agree that the Court should not impose a term of supervised release. (R.19, Plea Agreement, PAGE ID #36-37) (at ¶8). As noted in the PSR, an immigration detainer has been lodged against Mr. Cumplido-Lerdo and his deportation is imminent.

### Nature and Circumstances of the Offense.

Mr. Cumplido-Lerdo returned to this country without permission after previously being deported. He acknowledges that following the conclusion of this case, he will be removed from this country for the sixth time. (PSR, ¶13). But like so many people who immigrate to this country, Mr. Cumplido-Lerdo first came through no fault of his own. His mother, who was struggling to survive following the tragic and untimely death of her husband/Mr. Cumplido-Lerdo's father, packed up her children and moved to the states in search of a better life. At the time Mr. Cumplido-Lerdo was only 10 years old (yet a child), and he did not understand the legal ramifications attendant to his mother's decision. That being said, he certainly knows now that he cannot legally be here without permission; and he readily admits that his reentry in this instance was unlawful.

Notwithstanding Mr. Cumplido-Lerdo's immigration violation in this case, there are underlying facts that mitigate his initial deportation. Following his arrest for misdemeanor offenses in May 2010, *see* (PSR, ¶¶39-40), Mr. Cumplido-Lerdo was taken into ICE custody and served with a Notice to Appear for Immigration Proceedings. *See* Defense Exhibit A (served May 21, 2010). The Notice to Appear outlined the immigration offenses Mr. Cumplido-Lerdo was alleged to have committed and ordered him to appear in front of an immigration judge "on a date to be set" and "at a time to be set." *Id.* Thereafter, Mr. Cumplido-Lerdo was released on an

2

immigration bond.  *See* Defense Exhibit B.  Approximately six months passed before Mr. Cumplido-Lerdo's immigration hearing was scheduled.  As evidenced by the Decision rendered by the immigration court, Mr. Cumplido-Lerdo's hearing occurred on December 1, 2010.  *See* Defense Exhibit C.  Per the Judge's order, Mr. Cumplido-Lerdo was ordered removed in absentia after he failed to appear for the proceedings.  *Id.*  Notably, the Court concluded that Mr. Cumplido-Lerdo's non-appearance was not the result of "exceptional circumstances" and thereafter ordered his deportation when the Department of Homeland Security established his removability.  *Id.*

Despite the Judge's finding to the contrary, Mr. Cumplido-Lerdo did not willfully fail to appear in immigration court.  Rather, at the time of the hearing, he was in custody on a separate matter.  *See* (PSR, ¶41) (noting an arrest date of October 31, 2010, and a release date of January 9, 2011).  Following Mr. Cumplido-Lerdo's release, he was deported for the first time on February 5, 2011.  (PSR, ¶13).  At the time, he was only 21 years old and lacked familiarity with the immigration laws.  Moreover, in immigration court, there is no right to appointed counsel; thus, Mr. Cumplido-Lerdo was not informed of his right to reopen the decision; nor was he told he could try to seek an alternative form of relief.[2]

Since the initial deportation order, and Mr. Cumplido-Lerdo's first removal, he has been deported on four other occasions.  Each of those deportations occurred after the December 2010 order was reinstated.  In other words, Mr. Cumplido-Lerdo has never appeared in front of an immigration judge; nor has he challenged the initial order or sought to have it reviewed.  Instead, Mr. Cumplido-Lerdo has acquiesced each time that the initial deportation order has been reinstated.  By extension, every time Mr. Cumplido-Lerdo has been charged with a criminal

---

[2] For example, Mr. Cumplido-Lerdo might have qualified for a voluntary departure, which would not have constituted an order of deportation.

immigration offense, rather than seeking to collaterally attack the order and/or fight the case, he has accepted responsibility for his conduct and pled guilty in the various federal courts.  These facts serve to mitigate the nature and circumstances of Mr. Cumplido-Lerdo's offense conduct.

### History and Characteristics.

Similarly, the trauma Mr. Cumplido-Lerdo suffered as a child supports a downward variance from the advisory guideline range.  As detailed in the PSR, Mr. Cumplido-Lerdo's father was murdered when he was only 10 years old.  (PSR, ¶¶61, 63).  He and his two siblings lived with their mother at the time; and after the tragedy, they often felt unsafe, as the perpetrator was never held accountable.  (*Id.*).  As a child, he concluded that "if you had money, you were above the law." (*Id.*).  There was simply no other explanation for why his dad's killer was allowed to remain free.  That experience left a lasting impact on Mr. Cumplido-Lerdo's life and has arguably manifested in unhealthy behaviors throughout his adulthood (e.g., illustrated by the number of alcohol-related offenses Mr. Cumplido-Lerdo has accumulated).

The PSR notes that Mr. Cumplido-Lerdo has had limited rehabilitative services, having never participated in substance abuse treatment and received minimal treatment for his overwhelming anxiety.  (PSR, ¶¶69, 71).  Unfortunately, the Court cannot provide treatment or rehabilitative services for Mr. Cumplido-Lerdo, as the Bureau of Prisons largely excludes undocumented persons with outstanding deportation orders from receiving programming/services. Further, the amount of time remaining in the range stipulated to by the parties (i.e., 2.5 months) would likely keep Mr. Cumplido-Lerdo in local county custody or alternatively have him in transit to a federal prison and thereafter transferred to an immigration detention center.  In short, any sentence in excess of time served would be purely punitive and serve no other sentencing factor

4

under 18 U.S.C. § 3553(a).

**Other Sentencing Considerations.**

In addition to the time Mr. Cumplido-Lerdo must serve for the instant offense, he will be subjected to further incarceration awaiting his deportation. While a deportation can sometimes occur quickly, the Department of Homeland Security is statutorily permitted to detain a person awaiting deportation for up to 90 days. 8 U.S.C. § 1231(a)(1)(A). This period is known as the "removal period." *Id.* Thereafter, once the 90-day period has passed, there are provisions that arguably require the immigrant's release under supervision. However, practically speaking, immigrants are often detained in excess of the 90-day time frame. Thus, how long Mr. Cumplido-Lerdo will be held in immigration custody (following the conclusion of this case) is indeterminate. What is certain, however, is his continued detention. The Court may wish to consider this fact when fashioning an appropriate sentence.

One final point worth mentioning is the cost of Mr. Cumplido-Lerdo's continued incarceration. "The most recent advisory from the Administrative Office of the United States, dated October 1, 2025[,] suggests monthly costs for imprisonment [are] $4,309." (PSR, ¶91). As noted *supra*, Mr. Cumplido-Lerdo will have served 7 months and 17 days in custody. To incarcerate him for an additional 2 months and 13 days, the American taxpayers will be charged $10,485.32.[3] That price tag seems unnecessarily exorbitant, especially given the fact that it does not include the amount it will cost to detain Mr. Cumplido-Lerdo while he is awaiting deportation.

---

[3] Assuming a 30-day month, the daily cost of imprisonment is approximately $143.64. For 13 days, the cost to imprison Mr. Cumplido-Lerdo would be $1867.32. That cost, plus an additional $8618 (or the cost for 2 months in custody) totals $10,341.68.

5

**Conclusion.**

As articulated in the plea agreement, the parties jointly stipulated that any sentence between zero to 10 months would be an appropriate disposition.  Based on the foregoing, as well as the arguments that will be presented at sentencing, the defense submits that a sentence of time served is sufficient but not greater than necessary.  As outlined herein, such a sentence reflects a proper balancing of the factors under 18 U.S.C. § 3553(a) and it further takes into account the mitigation in Mr. Cumplido-Lerdo's history.

Wherefore, Mr. Cumplido-Lerdo respectfully asks the Court to impose a sentence of time served followed by no period of supervised release.

Respectfully submitted,

JOSEPH MEDICI
FEDERAL PUBLIC DEFENDER
*s/ Zenaida R. Lockard*
Zenaida R. Lockard (KY93402)
Assistant Federal Public Defender
250 East Fifth Street, Suite 350
Cincinnati, Ohio 45220
(513) 929-4834

Attorney for Defendant
Rogelio Cumplido-Lerdo

**CERTIFICATE OF SERVICE**

I hereby certify that a true and accurate copy of the Defendant's Sentencing Memorandum was served electronically upon Danielle Margeaux, Assistant United States Attorney, on this 5th day of February 2026.

*s/ Zenaida R. Lockard*
Zenaida R. Lockard (KY93402)
Assistant Federal Public Defender

6